# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| ROBERT WHITE | * | CIVIL ACTION NO. 17-1022 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| RICKY SLAUGHTER, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions: 1) a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] filed by defendants, Ricky Slaughter and Tony Anderson, and 2) a motion to remand [doc. # 12] filed by plaintiff Robert White. The motions are opposed. For reasons assigned below, it is recommended that both motions be denied, and that plaintiff's claims against Slaughter and Anderson be dismissed, without prejudice, for lack of subject matter jurisdiction.

## Background

On June 9, 2017, Robert White filed the instant petition for damages against his former employer, Crop Production Services, Inc. ("CPS"); his former supervisor at CPS, Ricky Slaughter; and a CPS division manager, Tony Anderson. (Petition). White alleges that on April 21, 2017, Slaughter, Anderson, and CPS wrongfully terminated his in excess of three year tenure at CPS after White repeatedly questioned business practices that were illegal and outside of CPS's ordinary course of business. *Id*. White alleges that because of his retaliatory firing, he suffered pecuniary loss and injury to his reputation. *Id*. He seeks treble damages, reasonable attorney's fees and costs. *Id*.

On August 11, 2017, CPS removed the suit to federal court on the sole basis of diversity

jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). Removing defendant, CPS, is a Delaware corporation, with its principal place of business in Colorado. *Id.*, ¶ 15. Plaintiff and the two individual defendants, Slaughter and Anderson, share common Louisiana citizenship. *Id*. ¶¶ 14, 15. To overcome the patent lack of complete diversity between the parties, CPS argued in its notice of removal that plaintiff has no reasonable possibility of recovery against his former co-employees/supervisors, and therefore, they were improperly joined in an effort to defeat federal diversity jurisdiction.

On August 24, 2017, consistent with the notice of removal, defendants Slaughter and Anderson, filed the instant motion to dismiss plaintiff's claims against them for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Noting that plaintiff failed to identify any specific theory of recovery in his lawsuit, movants construed the petition as endeavoring to assert claims for violations of Louisiana's Whistleblower Statute, Louisiana Revised Statute § 23:967 and Louisiana's Environmental Whistleblower Statute, Louisiana Revised Statute § 30:2027. Defendants argued that these provisions only provide a cause of action against the plaintiff's "employer," and because the individual defendants were not plaintiff's employer, he does not have a viable claim against them.

Needless to say, White disagreed with defendants' assessment of his claims against Slaughter and Anderson, and on September 11, 2017, filed the instant motion to remand for lack of subject matter jurisdiction because of the presence of the non-diverse defendants, i.e., incomplete diversity.[1] Plaintiff, however, did not address defendants' whistleblower arguments

---

[1] At the conclusion of his brief, plaintiff asserted that the court lacks "subject matter jurisdiction" because Slaughter and Anderson are Louisiana domiciliaries. By this statement, plaintiff appears to be conflating the jurisdictional requirement that all plaintiffs be diverse from all defendants, 28 U.S.C. § 1332, with the procedural bar against removal of a diversity suit that includes a forum-domiciled defendant, 28 U.S.C. § 1441(b)(2). In any event, as with a non-

2

in his motion. Instead, he asserted that he had valid state law tort claims against Slaughter and Anderson.

On September 13, 2017, plaintiff filed an opposition to the motion to dismiss in which he reurged the same arguments raised in his motion to remand. On September 21, 2017, Slaughter and Anderson filed a reply brief in support of their motion to dismiss. CPS filed its opposition to the motion to remand on October 3, 2017. Plaintiff completed the briefing process on October 13, 2017, with a reply brief in support of remand. Thus, the matter is ripe.

## Discussion

**I.      Motion to Dismiss Under Rule 12(b)(6)**

Last year, the Fifth Circuit recognized that as long as a non-diverse party "remains joined, the only issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir.2016) ("*IEVM*"). Thus, if this court determines that plaintiff enjoys a viable cause of action against at least one of the two non-diverse defendants, then the court lacks subject matter jurisdiction over the entire case, and cannot reach a merits-based Rule 12(b)(6) motion. *Id*. Moreover, even if the court were to find that plaintiff improperly joined the non-diverse defendants, then the court must dismiss them, without prejudice, because it lacks jurisdiction over the non-diverse defendants for purposes of an adjudication on the merits. *See IEVM, supra*. In other words, either way, the court must deny

---

diverse defendant, this procedural defect in the removal process may be cured if the removing defendant establishes that the forum-domiciled defendant(s) was improperly joined. *See e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 310 (5th Cir. 2002) (applying improper joinder to support removal of a case where the parties were diverse, but a forum-domiciled defendant was present).

the Rule 12(b)(6) motion.[2]

**II.  Motion To Remand**

    a)    <u>Removal and Improper Joinder Principles</u>

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). The removal statutes are strictly construed in favor of remand. *Manguno, supra*.

As recited earlier, CPS invoked this court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiff and defendants, 28 U.S.C. § 1332(a). Plaintiff stipulated that the amount in controversy exceeded $75,000 at the time of removal.[3] Moreover, the court agrees

---

[2]  In *IEVM*, the Fifth Circuit vacated the district court's ruling granting a Rule 12(b)(6) motion in favor of the non-diverse defendant because the court did not have jurisdiction to do so. *IEVM*, 818 F.3d at 210. The court explained that when the district court determined that the non-diverse defendant was improperly joined, the court effectively dismissed plaintiff's claims against the defendant without prejudice. *Id*. At that point, the district court should have denied the Rule 12(b)(6) motion, as moot. *Id*. In light of the undersigned's proposed disposition of plaintiff's motion to remand, *see* discussion, *infra*, defendants' Rule 12(b)(6) motion is consigned to the same fate.

[3]  *See* M/Remand, Memo., pg. 3.

that based on plaintiff's salary at the time of discharge,[4] his demand for treble damages, plus his request for attorney's fees, it is more likely than not that the claimed damages exceeded the requisite jurisdictional minimum. Thus, the sole jurisdictional issue is whether the parties are completely diverse.

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). Again, removing defendant, CPS, and plaintiff are citizens of different states. However, plaintiff and the two individual defendants, Slaughter and Anderson, share common Louisiana citizenship.

To disregard the citizenship of the two non-diverse, forum-domiciled defendants, CPS must establish that they are but nominal defendants/improperly joined. It is well-established that an improperly joined or nominal defendant need not be diverse from the plaintiffs for purposes of subject matter or removal jurisdiction. *See Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)). However, the improper joinder doctrine affords a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)). To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McDonal, supra* (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003)).

---

[4] Declaration of Marilyn Major; Notice of Removal, Exh. E.

In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine whether removing defendants have demonstrated that plaintiff has "no possibility of recovery" against the non-diverse defendants, *i.e.* that there is "no reasonable basis" for the district court to predict that plaintiff might recover against them. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc). The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, *supra*. However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*.[5]

"[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *IEVM*, 818 F.3d at 207-208. Here, defendant contends that plaintiff's complaint fails to state a claim against the non-diverse, forum-domiciled defendants. Accordingly, the court will employ a Rule 12(b)(6)- type analysis, which requires application of the *federal* pleading standard. *Id*.

b)      Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To withstand challenge, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing

---

[5] In other words, facts that can be easily disproved if not true. *Id.*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

On the other hand, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the

label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). In the end, however, plaintiff must "allege facts sufficient to state all the elements of h[is] claim." *Stone v. Louisiana Dep't of Revenue*, 590 Fed. Appx. 332, 339 (5th Cir.2014) (citations omitted).    c)    Plaintiff's Allegations

- As safety manager at CPS's Waterproof, Louisiana location, White was required to coordinate and conduct regular safety meetings. (Petition, ¶ 7). White questioned Slaughter regarding his failure to attend mandatory safety meetings. *Id*. In response, Slaughter ordered White to falsify Slaughter's attendance at the meetings. *Id*.

- White also questioned Slaughter's improper seed treatment practices. *Id*., ¶ 8.

- White's position required him to track and report inventory for the Waterproof location. *Id*., ¶ 9. He repeatedly raised concerns to Slaughter about missing inventory and discrepancies. *Id*.

- In early April 2017, Slaughter ordered White to accept and input seed purchased from a different distributor into CPS's inventory so that the seed could be treated and re-sold as a CPS product. *Id*., ¶ 10. White, however, informed Slaughter that he could not do so because the seed had been purchased from a different distributor. *Id*., ¶ 11.

- Slaughter commanded White to input the seed into the inventory, and cautioned him that if he failed to do so, then Slaughter would fire White and find someone who would input seed into the inventory. *Id*., ¶ 12.

- Slaughter fired White on April 21, 2017, in retaliation for White's repeatedly raising concerns about the business practices at CPS's Waterproof location. *Id*., ¶ 13. The practices violated CPS company policy, unspecified state law, and state environmental regulations. *Id*.

- On May 13, 2017, White met with Tony Anderson to convey his concerns about the aforementioned "illegal business practices," including the facts which led to White's termination. *Id*., ¶ 15. No remedial steps were taken to redress the issues raised by White. *Id*., ¶ 16.

- Slaughter, Anderson, and CPS wrongfully terminated White for raising concerns about ongoing violations of the law. *Id*., ¶ 17. As a result of the retaliatory firing, White suffered both pecuniary damage and damage to his reputation. *Id*.

d)    Analysis

8

At the outset, the court emphasizes that jurisdiction is assessed on the basis of claims in the state court complaint as it existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995). As the Fifth Circuit explained,

> [w]ithout such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.

*Id*.

Consequently, the court cannot credit plaintiff's post-removal attempts, via his memoranda, to amend his complaint to assert additional claims against the non-diverse defendants.

Having properly limited the scope of the jurisdictional inquiry to the face of plaintiff's complaint, it is manifest that White does not state a claim for relief against the non-diverse, forum-domiciled defendants. Stripped to its essence, plaintiff alleges that he was wrongfully terminated because he repeatedly complained to his supervisor about unscrupulous and possibly illegal activities that were occurring at CPS's Waterproof facility. Plaintiff's claim for damages are limited to his alleged retaliatory firing.

In Louisiana, there is a presumption that employment is at-will, and therefore, the party alleging the existence of an employment contract bears the burden of establishing same. *Krielow v. R & H Supply, Inc.*, 123 So.3d 1235, 1238 (La. App. 3rd Cir. 2013).[6] Here, plaintiff does not allege the existence of an employment contract. Accordingly, his employment was at-will,

---

[6] The parties analyzed the vitality of plaintiff's claims pursuant to Louisiana law. Therefore, the parties implicitly agree that the disputed state law issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

which means that his employer could terminate his employment "without assigning any reason for so doing,"[7] and beyond that, the reasons for termination need not be accurate, fair, or even reasonable. *Loya v. Lucas*, 201 So.3d 928, 933 (La. App. 4th Cir. 2016) (citations omitted). In fact, "an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." *Quebedeaux v. Dow Chem. Co.*, 820 So.2d 542, 545–46 (La. 2002) (citation omitted).

To be sure, an employer's otherwise unfettered right to discharge an employee is circumscribed by certain federal and state provisions, such as anti-discrimination laws, and laws protecting certain activities, including whistle-blowing and the right to present workers' compensation claims. *See Quebedeaux, supra* and *Loya, supra*. Here, however, plaintiff does not allege any facts to support a discrimination claim or a claim for retaliation for the exercise of workers' compensation rights. Rather, as defendants pointed out, the petition asserts facts to support a claim for retaliatory discharge related to plaintiff's reporting of, and refusal to perform certain unsavory, unsafe, and/or unlawful practices. These allegations squarely implicate Louisiana's Whistleblower and Environmental Whistleblower statutes which authorize an aggrieved *employee* to bring a civil action for damages against an *employer* stemming from the latter's retaliation against the former for engaging in protected activity. *See* La. R.S. §§ 23:967 and 30:2027. Neither statute, however, defines "employer."

For purposes of § 23:967, most courts have borrowed the definition of "employer" provided in Louisiana's Employment Discrimination Law, La. R. S. § 23:302(2) ("LEDL") i.e., "a person . . . receiving services from an employee and, in return, giving compensation of any kind to an employee." *Farmer v. Mouton*, No. 16-16459, 2017 WL 1837812, at *8–9 (E.D. La. May 8, 2017) (collecting cases). However, "[i]t is well established that the LEDL does not

---

[7] La. Civ. Code Art. 2747.

10

provide a cause of action against co-workers or other individual employees, only against employers." *Johnson v. C. H. Wilkinson Physician Network*, No. 17-0534, 2017 WL 3425799, at *4 (W.D. La. July 17, 2017), R&R adopted, 2017 WL 3403665 (W.D. La. Aug. 7, 2017). Accordingly, courts have recognized that because a supervisor is neither an employer in the traditional sense, nor an employer under the LEDL, a supervisor is not an employer under the Louisiana Whistleblower Act. *See e.g., Dronet v. LaFarge Corp.*, No. 00-2656, 2000 WL 1720547, at *2 (E.D. La. Nov. 17, 2000).

Although the undersigned is not acquainted with decisions defining employer in the context of the Louisiana Environmental Whistleblower Statute, the court discerns no reason not to apply the same rationale from the § 23:967 cases to preclude recovery against co-employees and supervisors under § 30:2027 – especially, where, as here, plaintiff advanced no argument to support such a claim. In effect, plaintiff abandoned the claims. *Farmer, supra* (plaintiff abandoned her claim against a supervisory official where she failed to respond to defendant's argument that she did not have a viable cause of action under the Whistleblower Statute against the supervisor).

In lieu of attempting to defend a whistleblower claim against his supervisors, plaintiff argues that his petition asserts or *could* assert additional causes of action against the non-diverse defendants for negligence or intentional tort. For instance, plaintiff argues that Slaughter's improper seed treatment potentially exposed plaintiff and the general public to hazardous and toxic chemicals. However, no allegations of exposure to toxic chemicals appear in the petition.[8]

---

[8] "Louisiana law does not permit a party to maintain an action for mental anguish based on an alleged 'fear' of contracting a disease in the future absent a showing that the party was actually exposed to a contaminated agent." *Nesom v. Tri Hawk Int'l*, 985 F.2d 208, 210 (5th Cir.1993) (citation omitted).

11

Moreover, plaintiff does not allege any damages[9] stemming from alleged exposure or potential exposure to toxic chemicals.

In addition, "an employee who is injured in an accident while in the course and scope of his employment is limited to the recovery of workers' compensation benefits . . ." *Schmit v. Tjitandi*, 223 So.3d 153, 156 (La. App. 1st Cir. 2017) (citation omitted). Thus, workers' compensation constitutes an employee's exclusive remedy against his fellow worker, which, under the law, also extends tort immunity to co-employees. *Id*. (citations omitted). However, "[t]here are two exceptions to this rule. The first is for injuries occasioned by the intentional act of the fellow employee. The second exception involves injuries that occur outside the course and scope of the employment." *Jewell v. Haire*, 887 So.2d 490, 493 (La. App. 1st Cir. 2004) (citation omitted).

Addressing the second exception first, the court observes that the "course of employment test refers to time and place, while the scope of employment test examines the employment related risk of injury." *Id*. According to the petition, any actions by Slaughter and Anderson occurred at work during employment hours. Moreover, any unarticulated injury (i.e., exposure to toxic chemicals) was employment rooted. *See Menson v. Taylor*, 764 So.2d 1079, 1083 (La.

---

[9] Under Louisiana law, the customary source for delictual liability is Civil Code Article 2315. To determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:
> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of **actual damages** (the damages element).

*Id*. (emphasis added).

App. 1ˢᵗ Cir. 2000). Thus, they were acting within the course and scope of their employment.

With regard to the intentional act exception to workers' compensation immunity, the court observes that an act is intentional when the employer either (1) consciously desires the physical result of his act; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. *White v. Monsanto Co.*, 585 So. 2d 1205, 1208 (La. 1991). In other words, "intent has reference to the consequences of an act rather than to the act itself." The term, "substantially certain," has been further defined to mean "virtually sure," and "incapable of failing." *Bridges v. Carl E. Woodward, Inc.*, 663 So.2d 458, 463 (La. App. 4th Cir. 1995); *Landry v. Uniroyal Chemical Co., Inc.*, 653 So.2d 1199, 1203 (La. App. 1 Cir. 1995); *Snow v. Lenox International*, 662 So.2d 818, 820, (La. App. 2d Cir. 1995); and *Scafidi v. Thompson-Hayward Chemical, Inc.*, 1995 WL 341569 (E.D. La. June 6, 1995). It requires more than a reasonable probability, even more than a *high probability*, that an accident or injury will occur. *Bridges*, *supra*; *Landry*, *supra*. Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence. *Id*.

Plaintiff's petition is devoid of facts to support a claim that Slaughter or Anderson intentionally desired to cause him injury from exposure to toxic seed treatment chemicals. In fact, there are no allegations of any actual injury at all. Moreover, there are no facts to suggest that Slaughter or Anderson's conduct made it virtually certain that plaintiff would suffer injury.

Plaintiff next argues that Slaughter's intentional mishandling, misappropriation, and theft of inventory from CPS made it impossible for him to perform his job properly. Similarly, plaintiff faults Anderson for hiring Slaughter despite his possible awareness that Slaughter had been fired from his prior job for engaging in similar behavior. However, because plaintiff is an at-will employee he has no legally protected interest in his employment and no cause of action for intentional and unjustified interference by an officer of his employer with his at-will

13

employment. *Favrot v. Favrot*, 68 So.3d 1099, 1112–13 (La. App. 4th Cir. 2011) (citation omitted); *see also Ashford v. Aeroframe Servs. LLC*, No. 14-0992, 2017 WL 2293109, at *10 (W.D. La. May 24, 2017).

Plaintiff further alleges that Slaughter and Anderson exposed him to an unreasonable risk of harm because plaintiff could face future criminal charges for theft stemming from the missing inventory. Similarly, plaintiff contends that he could be subjected to future lawsuits if members of the public sustain damages from their exposure to toxic, illegal, and unapproved chemicals used by Slaughter. Again, however, no such allegations appear in the petition. Moreover, these contingent injuries are too speculative to support a claim for relief. *See Lawrence v. Fed. Home Loan Mortgage Corp.*, 808 F.3d 670, 675 (5th Cir.2015); *Bayou Rapides Corp. v. Dole*, 165 So.3d 373, 386 (La. App. 3rd Cir. 2015). In fact, it may be said that these claims are not ripe, and therefore remain outside the province of the court's jurisdiction. *See Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3333 (1985) (claim involved "contingent future events that may not occur as anticipated, or indeed may not occur at all.").

In his reply brief, plaintiff assets that he has learned of "further" defamatory remarks made by Slaughter and Anderson that have damaged his reputation. Under Louisiana law, a cause of action for defamation is comprised of four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy*, 864 So. 2d 129, 139-40 (La. 2004) (citations omitted). If but one of the required elements of the tort is absent, the cause of action fails. *Id*. Furthermore, "[a] plaintiff in a defamation suit must name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements." *Clulee v. St. Pierre*, 142 So. 3d 83, 86-87 (La. App. 5th Cir. 2014) (citation omitted).

Plaintiff's petition is devoid of any alleged false or defamatory statement made by Slaughter or Anderson about plaintiff. If anything, the petition indicates that plaintiff was fired because he repeatedly raised concerns about certain practices and refused to engage in behavior that he believed to be dishonest or illegal. There is nothing false or defamatory about that. Moreover, plaintiff does not allege that Slaughter or Anderson communicated any false or defamatory statement to a third party.

Plaintiff further contends that he has a valid claim against Slaughter and Anderson for intentional/fraudulent misrepresentation, which requires allegations of: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Associates, Inc.*, 962 So.2d 1089, 1091 (La. App. 4th Cir. 2007). At minimum, however, the petition does not contain any allegations to establish that plaintiff justifiably relied on any misrepresentations by Slaughter and/or Anderson. Indeed, according to the petition, plaintiff was well aware of what Slaughter was up to, and confronted him about it. In response, Slaughter told plaintiff to falsify records and to sweep the irregularities under the rug. In fact, Slaughter even advised plaintiff that if he failed to do so, Slaughter would fire him. According to plaintiff, that is exactly what he did. The court fails to discern any cognizable claim for intentional/fraudulent misrepresentation on the face of the petition.

Insofar as plaintiff may have intended to advance an unarticulated claim for intentional infliction of emotional distress the court observes that to be actionable,

> [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are

15

>definitely inconsiderate and unkind. Not every verbal encounter
>may be converted into a tort; on the contrary, some safety valve
>must be left through which irascible tempers may blow off
>relatively harmless steam . . .

*White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991) (citations omitted).

Further, "[c]onduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous for purposes of the tort of intentional infliction of emotional distress." *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp.3d 532, 552 (W.D. La.2017) (*citing Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1024-25 (La. 2000)). While Slaughter and Anderson's alleged actions may have been unethical, distasteful, and/or illegal, there is nothing in the pleading that could be "regarded as atrocious and utterly intolerable in a civilized community." *White* at 1209. Thus, plaintiff's petition does not support a claim for intentional infliction of emotional distress.

In sum, the undersigned finds that removing defendant has established that plaintiff has no reasonable possibility of recovery against Slaughter and Anderson, and therefore, their presence must be disregarded for purposes of subject matter and removal jurisdiction.[10] Under these circumstances, the court lacks subject matter jurisdiction to entertain the action against Slaughter and Anderson, thus compelling their dismissal, without prejudice. *IEVM, supra*.[11] The remaining parties are completely diverse, with no forum-domiciled defendant. Thus, the court may exercise subject matter and removal jurisdiction. 28 U.S.C. §§ 1332 and 1441.

## **Conclusion**

---

[10] In his memoranda, plaintiff maintains that defendants have not set forth sufficient evidence to establish that he has no reasonable possibility of recovery against the two non-diverse, forum-domiciled defendants. The court hastens to explain, however, that while defendants have the burden of proof to establish improper joinder, they need not adduce any evidence, when as here, the petition fails to state a claim for relief against the nominal parties.

[11] However, "[a]s the claim or claims against the nondiverse defendant must be dismissed without prejudice, the plaintiff is not barred by *res judicata* from refiling those claims in state court if he so desires." *IEVM*, 818 F.3d at 202 n.25.

For the above-assigned reasons,

IT IS RECOMMENDED that defendants' motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] and plaintiff's motion to remand [doc. # 12] be DENIED.

IT IS FURTHER RECOMMENDED that plaintiff's claims against Ricky Slaughter and Tony Anderson be DISMISSED, without prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 15th day of November 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE